## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

DAN LOVE and JOHN STEWART,  §
                Plaintiffs,  §
                           §

v.  §                CIVIL ACTION NO. 4:11-1192
                           §

HAJOCA CORPORATION, *et al.*,  §
                Defendants.  §

## MEMORANDUM AND ORDER

This age discrimination case is before the Court on Defendants Hajoca Corporation, LCR-M General LLC, LCR-M LP, and Moore Supply Company's (collectively, "Defendants") Motion for Summary Judgment as to Plaintiffs Dan Love [Doc. # 46] ("Love Motion") and John Stewart [*Stewart* Doc. # 48] ("Stewart Motion").[1] The Motions are fully briefed and ripe for consideration.[2] After carefully considering the record, the arguments of both parties, and the applicable law, the

---

[1]    Unless otherwise stated, all citations in this Memorandum and Order are to documents and docket numbers in *Love v. Hajoca Corporation*, Civil Action No. 4:11-1192. Citations to documents in *Stewart v. Hajoca Corporation*, Civil Action No. 4:11-1193, appears as "*Stewart* Doc. # __."

[2]    Defendants filed a Memorandum in support of the Love Motion [Doc. # 46-1] ("Love Memorandum") and a Memorandum in support of the Stewart Motion [*Stewart* Doc. # 48-1] ("Stewart Memorandum"). Plaintiff Dan Love filed a Response to Defendants' Motion for Summary Judgment [Doc. # 59] ("Love's Response"), and Plaintiff John Stewart filed a Response to Defendants' Motion for Summary Judgment [Doc. # 58] ("Stewart's Response"). Defendants filed a Reply Brief in Support of Motion for Summary Judgment [Doc. # 77] ("Defendant's Reply").

Court concludes that Defendants' Motions for Summary Judgment should be **granted**.

## I.   BACKGROUND

Defendants LCR-M General LLC, LCR-M LP and Hajoca Corporation ("Defendants") are affiliated companies.[3]   Defendants each distribute plumbing supplies and fixtures from locations in Texas, Mississippi, Arkansas, and Louisiana.[4] Defendants operate stores under the name Moore Supply Company.[5]   The Moore Supply Company stores are assigned to regions.[6]  Each region has a manager as does each store.[7]

Plaintiff Dan Love ("Love") began working for Moore Supply Company in 1985 as an inside salesperson at a store in Huntsville, Texas.[8]  Love transferred to the

---

[3]     Sworn Declaration of Lee Cormier  [Exh. B to Doc. # 46-2], at 19, ¶ 2.

[4]     *Id.*

[5]     Hajoca Corporation Assumed Name Certificate [Exh. 79 to Doc. # 68-4], at 2.

[6]     *See* Sworn Declaration of Colin Boyd [Exh. A to Doc. # 46-2] ("Boyd Decl."), at 2, ¶ 3.

[7]     *See id.*

[8]     Deposition of Dan Love ("Love Depo.") [Exh. 7 to Docs. # 61-2,  # 62, # 62-1, and # 62-2], at 28, 40, 41.

Conroe, Texas, store in 1990.[9]  Plaintiff John Stewart ("Stewart") began working for Moore Supply Company in December 1967.[10]  While working for Moore Supply Company, Stewart held various positions in multiple locations including Baytown, Conroe, Humble, and Tomball.[11]  Eventually, he transferred to the Conroe store in March 1998 and was assigned to counter sales, helping walk-in customers rather than entering bids from pre-existing accounts.[12]

During the events surrounding this case, Love and Stewart worked in the South Texas region at the Conroe  store.[13]  Mark Hanley managed the South Texas region, which encompassed approximately twenty-two stores.[14]  Colin Boyd managed the Conroe store, at which between nine and thirteen workers were employed.[15]

In the fourth quarter of 2008, the revenue in Defendants' South Texas region

---

[9]     *Id.* at 41.

[10]    February 10, 2012 Deposition of John Stewart [Exh. 5 to *Stewart* Docs. # 57, # 57-1, # 58, # 58-1, # 59, # 59-1, and # 60] ("Stewart Depo."), at 13.

[11]    *Id.* at 13-17; February 9, 2011 Deposition of John Stewart [Doc. # 61-1] ("Febraury 9 Stewart Depo."), at 37.

[12]    February 9 Stewart Depo., at 66.

[13]    Love Depo., at 41.

[14]    Deposition of Mark Hanley [Exh. E to Doc. # 46-7] ("Hanley Depo."), at 10.

[15]    Boyd Decl., at 2, ¶ 3.

dropped as a result of the economic recession.[16]  In late 2008 through 2009, Hanley

counseled Boyd on ways to improve performance at the Conroe store.[17]  Hanley

instructed Boyd to cut overtime and reduce the net salary ratio.[18]  Boyd began by

reducing overtime.  In May 2009, he informed all employees that overtime was no

longer permitted.[19]  Hanley also instructed Boyd to evaluate each employee in the

Conroe store and grade them on a scale from "A" to "F."[20]  Boyd gave Love and

Stewart the lowest grades among the salespeople at the Conroe store.[21]  He gave Love

a C+ and described him as "extremely SLOW" with low profit margins and lacking

knowledge of the company's computer system.[22]  Boyd gave Stewart a D-, described

his attitude as "sub-par," and stated that Stewart struggled in dealing with customers

---

[16]    Love's Response, at 10 (citing Hanley Depo., at 23-24).

[17]    December 22, 2008 Email from Hanley to Boyd [Exh. D-1 to Doc. # 46-6], at 22;
March 28, 2009 Email from Hanley [Exh. D-2 to Doc. # 46-6], at 23.

[18]    Deposition of Colin Boyd ("Boyd Depo.") [Exh. 9 to Doc. # 63], at 80; December 22,
2008 Email from Hanley to Boyd, at 22.

[19]    Love's Response, at 8; Love Depo., at 54-55, 80-81; Boyd Decl., at 2, ¶ 4; May 29,
2009 Email from Boyd to Stewart [Exh. C-7 to Doc # 46-5], at 4.

[20]    Love's Response, at 12 (citing Employee Ratings [Exh. C-8 to Doc. # 46-5], at 5-6).

[21]    Employee Ratings, at 6.

[22]    *Id.*

and left "everyday at 4:30 pm even if he [was] in the middle of helping a customer."[23]

On July 30, 2009, Hanley met with Boyd again to discuss sales and employee performance.[24]   Hanley recommended that Boyd reduce his net salary ratio by reducing the Conroe store staff from thirteen to twelve employees.[25]   Hanley and Boyd identified Love and Stewart as the least effective employees, and Hanley suggested that Boyd consider replacing both of them with one stronger sales person.[26]   Hanley further instructed Boyd to document areas where Love and Stewart were underperforming, inform them of his expectations for their performance, and explain why their performance was no longer acceptable in light of the economic recession.[27] Hanley also instructed Boyd that while he should be helping Love and Stewart improve, he should also be looking for a stronger replacement.[28]

Shortly thereafter, on August 11, 2009, Boyd prepared a formal performance

---

[23]    *Id.*

[24]    Love's Response, at 13 (citing July 30, 2009 Email from Hanley [Exh. C-10 to Doc. # 46-5], at 11-12).

[25]    *Id.*

[26]    *Id.*  In Hanley's deposition, he denied that he wanted to replace Love or Stewart. Hanley Depo. [Exh. 11 to *Stewart* Doc. # 64], at 57-58.

[27]    *Id.*

[28]    *Id.*

review for Love.[29]  Boyd told Love that he needed to increase his profit margins and should work more quickly, especially when preparing bids on the computer.[30] Similarly, on August 19, 2009, Boyd prepared a performance review for Stewart.[31]

A month later, on September 15, 2009, Defendants laid off Love, who was 54 years old at the time.[32]  On January 21, 2010, Defendants laid off Stewart, who was 63 years old at the time.[33]  Betty Siler ("Siler"), Defendants' administrative assistant in Conroe, also was discharged on January 21, 2010.[34]  She was 60 years old at the time.[35]  Love, Stewart, and Siler were the oldest employees at the Conroe Store.[36] Another employee, Will Thompson, quit reporting to work shortly after Love, his

---

[29]   August 21, 2009 Love Employee Performance Review ("Love Performance Review") [Exh. C-11 to Doc. # 46], at 13-16.

[30]   Love Depo., at 103-06.

[31]   August 19, 2009 Stewart Employee Performance Review ("Stewart Performance Review") [Exh. 15 to *Stewart* Doc # 48-5], at 91-94; Stewart Depo., at 75-76.

[32]   Love Depo., at 8, 16.

[33]   Stewart Depo., at 94-95.

[34]   Boyd Decl., at 4-5, ¶ 10-11.

[35]   *Id.*

[36]   *See* Conroe PC702 Total Employees ("PC702 Employee List") [Exh. 110 to Doc. # 71-2], at 2.  The nine other employees who worked at the Conroe store during the relevant period were Matthew Brewington (25 years old); Colin Boyd (29 years old); Brian Bogan (33 years old); Thomas Taft (34 years old); Lindsey Edmiston (34 years old), Garland Lawson (38 years old); Jose Rivera (43 years old); Donald Ballard (49 years old); and Jeff Brewer (52 years old).  *Id.*

uncle, was laid off in September.[37]  Boyd did not replace any of the four employees and continued operating the Conroe store for the next two and a half years with nine employees instead of thirteen.[38]

On January 28, 2010, Love filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendants discriminated against him because of his age.  On February 12, 2011, Stewart filed an EEOC charge alleging that he, too, was discriminated against because of his age.  Plaintiffs filed their lawsuits on April 3, 2011, asserting age discrimination claims, and the cases eventually were consolidated for all purposes.[39]

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the

---

[37]    Boyd Decl., at 5, ¶ 12.

[38]    *Id.* at 6, ¶ 13.

[39]    *See* December 19, 2012 Order to Consolidate Cases [Doc. # 56]; Dec. 19, 2012 Order to Consolidate Cases [*Stewart* Doc. # 73].  Initially, each case was assigned to a different judge.  Love's case was assigned to the undersigned.  Stewart's case was assigned to the Honorable Keith P Ellison.  *See Stewart v. Hajoca Corporation*, Civil Action No. 4:11-1193.

moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).   The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325; *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008).  If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).  The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party.  *Nat'l Union*, 532 F.3d at 401.

The Court is not required to accept the non-movant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003)); *see also Delta & Pine Land Co. v.*

*Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (stating that "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (explaining that "a party's self-serving and unsupported claim" in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary). The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (internal quotation marks and citation omitted). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Although the Court may consider other materials in the record, the Court only needs to consider cited materials. FED. R. CIV. P. 56(c)(3).

### B.   ADEA Discrimination Claims

Love and Stewart each contends that he was laid off by Defendants because of his age. The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, *inter alia*, prohibits an employer from failing to hire, refusing to hire, discharging, or otherwise discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

9

individual's age." 29 U.S.C. § 623(a)(1). "Under the ADEA, the plaintiff has the burden of persuasion to show 'that age was the "but-for" cause of [his] employer's adverse action." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). In *Gross*, the Supreme Court rejected arguments that plaintiffs need only show that age was a "motivating factor" in the employer's decision or action. *See, e.g.*, *id.* at 174-180 ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." (citations omitted)). An age discrimination claim "'cannot succeed unless the employee's protected trait actually played a role in [the employer's decision-making] process *and had a determinative influence on the outcome*.'" *Id.* at 176 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

A plaintiff may meet this burden with either direct evidence or circumstantial evidence. *Kilgore v. Brookeland Indep. Sch. Dist.*, No. 13-40005, 2013 WL 4031038, at *2 (5th Cir. Aug. 8, 2013) (unpublished) (citing *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012)). If the plaintiff, as here,[40] does not have direct evidence

---

[40]   Plaintiffs have offered no direct evidence of age discrimination. Indeed, Plaintiffs each testified that there were no documents or emails that reflect age discrimination and that Boyd and Hanley did not make any comments that reflected age discrimination. *See* Love Depo., at 12-14; Stewart Depo., at 10-11.

10

of age discrimination, the Court applies the burden shifting framework set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[41]  *Id.*  Under the *McDonnell*

*Douglas* framework, a plaintiff must first establish a *prima facie* case of age

discrimination.  *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (citing

*Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

In a case that does not involve a reduction in force ("RIF"), the plaintiff must

show that "'(1) he was discharged; (2) he was qualified for the position; (3) he was

within the protected class at the time of discharge; and (4) he was either i) replaced

by someone outside the protected class, ii) replaced by someone younger, or iii)

otherwise discharged because of his age.'"  *Kilgore*, 2013 WL 4031038, at *3

(quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)); *Jackson*,

602 F.3d at 378 (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir.

2007)).  If a RIF is involved, as here, the plaintiff must demonstrate that:

> (1) the plaintiff is within the protected age group under the ADEA;
> (2) he or she was adversely affected by the employer's decision; (3) he
> or she was qualified to assume another position at the time of the
> discharge or demotion; and (4) evidence, either circumstantial or direct,
> from which a factfinder might reasonably conclude that the employer
> intended to discriminate in reaching its decision.

---

[41]    Although the United States Supreme Court did not address in *Gross*, *see id.*, 557 U.S.
at 175 n.2, whether the *McDonnell Douglas* framework applies in ADEA cases, this
Court is bound by Fifth Circuit precedent applying the framework in ADEA cases.
*See, e.g.*, *Jackson*, 602 F.3d at 378 & n.15.

*Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 118 (5th Cir. 1993); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 642 (5th Cir. 1985)), *overruled on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *see also Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 269 (5th Cir. 2013) (unpublished) (quoting *Nichols*, 81 F.3d at 41).  "In the context of a reduction in force, . . . , the fact that an employee is qualified for his job is less relevant—some employees may have to be let go despite competent performance."  *Tex. Instruments Inc.*, 100 F.3d at 1181 (citation omitted); *see also Barber v. Shaw Group, Inc.*, 243 F. App'x 810, 811 (5th Cir. 2007) (unpublished) (quoting *Tex. Instruments Inc.*, 100 F.3d at 1181).

If the plaintiff establishes a *prima facie* case of age discrimination, "the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for terminating employment."  *Miller*, 716 F.3d at 144 (*Machinchick*, 398 F.3d at 350). A RIF is a legitimate, nondiscriminatory reason for discharging an employee. *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).  "Performance deficiencies are also a legitimate reason for discharge."  *Kilgore*, 2013 WL 4031038, at *3 (citing *Davis v. W. Cmty. Hosp.*, 786 F.2d 677, 683 (5th Cir. 1986)); *see also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)).

If the employer meets its burden, "the burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age." *Miller*, 716 F.3d at 144 (citing *Gross*, 557 U.S. at 180). "To make a showing of pretext sufficient to submit her case to a jury, [the plaintiff] 'must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates.'" *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 577 (5th Cir. 2002) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

## III.   ANALYSIS

### A.   Stewart: *Prima Facie* Case

The Court assumes for the purpose of this opinion that Love can satisfy his burden on all four *prima facie* elements of his reduction-in-force ("RIF") ADEA discrimination claim.

Stewart, on the other hand, has not met his burden to show that he can establish a *prima facie* case of age discrimination under the circumstances presented. Although Stewart demonstrated that he was within the age group protected under the ADEA when discharged and was adversely affected by his discharge, he has failed to

13

demonstrate that he was qualified to assume another position at the time of the discharge.[42]  Stewart worked in counter sales for the twelve and a half years preceding his discharge.[43]  It was the only job he ever held at the Conroe store.[44]  Although the job of a counter salesperson appears very similar to that of an inside salesperson,[45] Stewart did not do—and had never done—bids,[46] a fundamental job duty of an inside salesperson.[47]  Furthermore, when doing formal bids, employees were usually required to use a computer,[48] a skill Stewart admitted he lacked.[49]  He acknowledged that he could not type.[50]  He also has offered no evidence that he was qualified to work in any other position at the Conroe location, including working in outside sales, the warehouse, or the showroom.  It is undisputed that prior managers had asked Stewart to take on additional tasks associated with an outside salesperson position, *i.e.*,

---

[42]     *See, e.g.*, *Woodhouse*, 92 F.3d at 252 (citations omitted); *Nichols*, 81 F.3d at 41.

[43]     Stewart Depo., at 18, 40.

[44]     *Id.*

[45]     *See, e.g.*, Love Depo., at 20-21; Declaration of Jeff Brewer [Exh. G to 46-7] ("Brewer Decl."), at 34 ¶ 2.

[46]     Stewart Depo., at 18-19, 49.

[47]     *See, e.g.*, Love Depo., at 23-24.

[48]     *Id.* at 23-24.

[49]     *Id.*

[50]     *Id.* at 18-19, 40-41; Love Depo., at 23-24.

seeking new sales, but he did not do so.[51]  Stewart also admits that he had not spent

more than minimal time working in the showroom and had not worked in the

warehouse with any regularity.[52]  Stewart has not shown that he was qualified to

assume a different position at the Conroe store at the time of the RIF.  He accordingly

has failed to establish a *prima facie* case of age discrimination.

### B.    Pretext

Assuming that Plaintiffs both have demonstrated a *prima facie* case of age

discrimination, neither Plaintiff has demonstrated that Defendants' proffered reasons

for discharging him were pretextual.  Defendants have articulated several legitimate,

nondiscriminatory reasons for terminating Plaintiffs' employment—a RIF due to the

poor economy and associated weak sales, as well as Plaintiffs' respective performance

issues.  Plaintiffs do not argue that the RIF was pretextual.[53]  Instead, Plaintiffs dispute

Boyd and Hanley's decision, as part of the RIF, to discharge them rather than

---

[51]   *See id.* at 29-30 (former manager Jim Brewington asked Stewart to make outside sales to builders but Stewart did not attempt to do so), 35-36 (former manager Robert Meadows asked Stewart to make outside sales to plumbers but Stewart did not attempt this either).

[52]   Stewart Depo., at 48-50.

[53]   Both Love and Stewart testified that Defendants were facing financial issues.  *See, e.g.*, Love Depo., at 46, 77-78; Stewart Depo., at 58-59, 61-64.  Defendants offered undisputed evidence that they were impacted by the economic downturn in 2009.  Sales in 2009 were $1.3 million lower than in 2008, and profits dropped by 50% during that time period.  Boyd Decl., at 4, ¶ 9.

discharge other employees at the Conroe store.

### 1. Love's Failure to Show Pretext

Defendants argue that Love was chosen as the first employee to be laid off because he "was the least productive employee in terms of gross margins, was slow in his work, and lacked typing and computer skills, which often required him to ask others for help in performing sales tasks such as preparing bids for customers."[54]  The time spent helping Love took the other employees away from their own job duties and likely lowered their productivity.

Love does not offer evidence to refute Defendants' proffered reasons for his discharge.  First, Love admits that he lacked computer and typing skills, that it took him a long time to enter bids into the computer, and that he required assistance to input bids if the bids needed to be done in a timely manner.[55]  Stewart confirmed that Love was slow,[56] and one of Love's former managers, Jim Brewington, also criticized

---

[54]   Love Motion, at 2.  Love testified that his typing skills deserve a grade lower than "a C plus," the grade given him by Boyd.  Love Depo., at 93.

[55]   Love Depo., at 23-24, 70, 132.  Furthermore, Defendants offered evidence that Love made a mistake on a quote to Rock of Ages, his largest customer, that cost the Defendants to lose approximately $1,200 on a single order.  Love Performance Review, at 15.  Love does not explicitly dispute that the incident occurred and could not recall exactly what happened.  *See* Love Depo., at 108-09.

[56]   Stewart Depo., at 70.  Love also admitted that he was "meticulous" in his work, resulting in him taking "a few more minutes to check orders."  *See, e.g.*, *id.*

16

him for being slow.[57]

Second, Love has not offered competent summary judgment evidence that he did not have the lowest gross margins.[58]  Love testified that he did not dispute the sales numbers presented by Defendants.[59]  Rather, Love argues that his lower gross margins are misleading or incorrect because the other inside sales employees, Donald Ballard and Matthew Brewington, received credit for sales made by their store manager, Boyd.  Love has presented no evidence of account and sales transfers other than their conclusory deposition testimony.  Love merely speculates that sales were transferred; he offers no non-speculative evidence of transfers of any particular accounts, of the value of the allegedly transferred sales or accounts, or whether the alleged transfers were included in or impacted gross margins for which Love was held accountable.[60]  If the transfers alleged by Love occurred, there is no evidence that the

---

[57]    Love Depo., at 61-62.  Love's positive performance review from Kennie Bates in 2006 is too remote in time to create a genuine issue of material fact.

[58]    *See* Dan Love Sales Figures [Exh. 47 to Doc. # 66-1], at 2; Matthew Brewington Sales Figures [Exh. 48 to Doc. # 66-2], at 2; Rock of Ages Customer Sales Detail [Exh. 49 to Doc. # 66-3], at 2; Sales and Margins Report [Exh. 109 to Doc. # 71-1], at 3; Sales by Salesperson [Exh. 112 to Doc. # 71-4], at 2-3.

[59]    Love Depo., at 115-18.

[60]    *See* Love Depo., at 16, 127-28, 131.  Although Love named three accounts that he believed were transferred, *see id.* at 124-26, 143-44, he could not identify, and offered no documentary or other proof concerning, how many sales were transferred, the value of the sales, or how the sales in question impacted gross margins.  Indeed, Love
(continued...)

17

transfers caused Love's gross margins to appear meaningfully lower than the younger employees.  The Court finds Love has failed to raise a genuine question of material fact that Defendants' reasons for Love's selection for lay off were false or otherwise pretextual.  The Court therefore grants Defendants' Motion for Summary Judgment as to Love.

### 2.     Stewart's Failure to Show Pretext

Stewart also has failed to demonstrate that Defendants' proffered reasons for discharging him were pretextual.  Defendants assert that Stewart was chosen for lay off because "his attitude and work performance were considered lower than the employees retained," customers had complained about him, he showed no improvement during the four month period after his August meeting with Boyd, and he was unable to "do bid work" because he could not use the computer proficiently.[61] Stewart admitted that customers filed complaints against him and that he was "written

---

[60]     (...continued)
could not identify a single sale "in the range of $100,000" that was transferred.  *Id.* at 146.  Further, in one of the three examples (Mr. Wheatley's account), Jeff Brewer, who had no role in the RIF decisions, was the person who chose Matthew Brewington to write up the bids.  Brewer Decl., at 35.  Plaintiffs have offered no evidence to the contrary and have not alleged that Brewer was a decision-maker or discriminated against them.

[61]     Stewart Motion, at 2; Stewart Memorandum, at 9-10.

up" because of a customer complaint before he was laid off.[62]  Boyd testified that

before or at the time of Stewart's discharge, customers had not filed complaints

against any other salespeople.[63]  Plaintiff has offered no evidence to the contrary or

that other Conroe store employees were treated more favorably after similar

complaints.  Further, Stewart testified that he could not do bid work,[64] a regular part

of the inside salesperson position,[65] and that he had a positive relationship with Boyd

until it deteriorated a few weeks before he was laid off when Stewart was asked to

sign an employee disciplinary report.[66]  Stewart offered no evidence of pretext and has

not discredited the reasons proffered by Defendants.[67]  Stewart accordingly has failed

---

[62]     Stewart Depo., at 77, 82, 88, 92-94.

[63]     Boyd Depo., at 154-55.

[64]     Stewart Depo., at 40-41.

[65]     *See, e.g.*, Love Depo., at 23-24.

[66]     Stewart Depo., at 24-28; January 11, 2010 Employee Disciplinary Report [Exh. 25 to *Stewart* Doc. # 48-5], at 101.

[67]     Defendants do not argue that Stewart's low gross-margins were a basis for his discharge.  Stewart nevertheless appears to argue that his layoff was pretextual due to the alleged transfer of sales and accounts by Boyd to people other than Stewart. *See* Stewart's Response, at 26-27, 29.  There is no evidence that Stewart's gross margins were considered by Boyd and Hanley as a reason for his layoff.  However, to the extent this argument is relevant to Stewart's argument of pretext, he has not presented sufficient evidence of account and sales transfers.  Stewart did not know, and has presented no evidence regarding, how many sales or accounts were transferred.  *See* Stewart Depo., at 91.  Indeed, he was not even sure if sales or accounts could be transferred.  *See id.* at 127.  Although he alleged that Boyd
(continued...)

to raise a genuine question of material fact on pretext, and Defendants' Motion for

Summary Judgment as to Stewart is granted.[68]

### 3.    Other Candidates for the RIF

Plaintiffs appear to generally argue that other employees should have been

chosen as part of the RIF.  If a plaintiff is attempting to show age discrimination based

on the retention of a younger employee or the hiring of a younger replacement, the

_____

(...continued)
      transferred sales of multiple customers to younger employees, Stewart only testified
      to the transfer of sales from one account, Bic's Plumbing, to one younger employee,
      Matthew Brewington.  Even with regard to that transfer, Stewart was not aware of the
      amount of sales that were transferred.  *See id.*  Additionally, even if sales or accounts
      were transferred to Brewington, in 2009, Brewington's sales were over one million
      dollars higher than Stewart's sales (and Love's sales) and his gross margin was almost
      double that of Stewart's (and over double that of Love's).  *See* Sales and Margins
      Report, at 3.

[68]    Plaintiffs argue that the reasons for their discharge are pretextual because the reasons
      Stewart was chosen for discharge are not the same reasons that Love was chosen.  *See*
      Love's Response, at 28-29; Stewart's Response, at 28-29.  This argument patently
      lacks merit.  There is no requirement that in a RIF, an employer must lay off all
      employees with the same performance-related issues, or that an employer can only use
      a single criterion to evaluate employees.

      Additionally, Plaintiffs contend that Boyd's evaluation of them creates a genuine
      issue of fact because it is based on solely subjective criteria.  Love's Response, at 27;
      Stewart's Response, at 27-28.  The Court disagrees.  Boyd and Hanley's layoff
      decisions were not solely based on Boyd's graded ranking of the Conroe employees.
      Love's discharge was based, in part, on his low gross margins, his lack of computer
      skills, and the slow speed of his work.  Gross margins are objective criteria.  Indeed,
      Love testified that he thought layoffs should be based on employee's sales.  Love
      Depo., at 49.  Further, Love admits to his lack of computer and typing skills, and the
      evidence reveals that Love was slow with this work.  In Stewart's case, objective
      criteria—that customers had complained about Stewart and he could not do bid
      work—were significant grounds used to determine whether he should be discharged.

***plaintiff must demonstrate*** that the younger employee was "clearly less qualified."
*See Tex. Instruments Inc.*, 100 F.3d at 1181 (citation omitted) (emphasis added); *see also Daniel v. Universal ENSCO, Inc.*, 507 F. App'x 434, 439 (5th Cir. 2013) (unpublished) (citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010); *Nichols*, 81 F.3d at 42); *Tyler*, 506 F. App'x at 270; *Ratcliff v. ExxonMobil Corp.*, 57 F. App'x 210, 210 (5th Cir. 2002) (unpublished)); *Nichols*, 81 F.3d at 41-42. Significantly, the Court must focus on "why the plaintiff rather than another employee was discharged" rather than "on why employees, in general, were discharged." *Woodhouse*, 92 F.3d at 253 (quoting *Thornbrough*, 760 F.2d 642).  Plaintiffs have failed to meet this burden.  They have offered no evidence that they were clearly more qualified than the other Conroe store employees who were not laid off.

Plaintiffs contend that they were replaced by Brewer, who was moved from outside sales to inside sales in October or November 2009, close in time to Plaintiffs' discharges.[69] This argument lacks merit.  First, Boyd's transfer of Brewer to an inside sales position does not constitute the replacement of either Love or Stewart.  "[A] terminated employee has not been 'replaced' when his position is eliminated and his former duties are distributed among other co-workers."  *Rexes v. The Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2000) (unpublished) (citing *Dulin v.*

---

[69]    *See* Love's Response, at 36; Stewart's Response, at 32.

*Dover Elevator Co.*, 139 F.3d 898, at *3 (5th Cir.1998) (unpublished)).  Because Brewer was already employed by Defendants, he did not "replace" Love or Stewart when he allegedly assumed Love's, and later Stewart's, duties.  Second, for the reasons articulated above, Plaintiffs have offered no evidence that either Stewart or Love was clearly more qualified for the inside sales position than Brewer.  Indeed, the evidence is to the contrary.  Third, Brewer was only two years younger than Love at the time of Plaintiffs' discharges.  Such an small age gap is too minimal to demonstrate pretext as to Love.[70]

### 4.  Other Arguments

***Isolated Evaluations.***— Plaintiffs contend they were targeted for evaluation resulting in their discharge because no other employees were evaluated or presented with reviews and expectations in August and September 2009.[71]  In fact, Plaintiffs were given formal performance reviews only after Boyd evaluated all of the employees at the Conroe store and Plaintiffs received the lowest two scores.[72]

---

[70]     *See Jackson*, 602 F.3d at 378 n.18 (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996), for the proposition that "replacement by someone 'substantially younger' can be an indicator of age discrimination"); *Williams v. Harris Cnty. Hosp. Dist.*, 54 F. App'x 412, 412 (5th Cir. 2002) (unpublished) (same).

[71]     *See* Love's Response, at 35-36, 38; Stewart's Response, at 31-34.

[72]     Employee Ratings, at 5-7.  Further, Stewart admitted that he was not asked to spy on Love;
(continued...)

Additionally, Defendants have offered uncontradicted evidence that Boyd evaluated and took disciplinary action against younger employees.   Boyd terminated Lisa Grubbs, a showroom salesperson in her 30's, for performance deficiencies.[73]   Bo Scholze, a driver in his 20's, was warned that he would be terminated if he did not fix his performance deficiencies, and he ultimately voluntarily resigned.[74]   Plaintiffs' arguments that they were singled out for evaluation are belied by the record.

***Statistical Evidence.***— Next, Plaintiffs argue that there is statistical evidence of age discrimination.[75]   Although "generalized statistical evidence will rarely rebut a particularized nondiscriminatory rationale, statistical evidence may be probative of pretext in limited circumstances, however."   *Tex. Instruments Inc.*, 100 F.3d at 1185 (citing *Deloach v. Delchamps*, Inc., 897 F.2d 815, 820 (5th Cir. 1990)); *see also Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999).   As explained in *Walther v. Lone Star Gas Co.*, 952 F.2d 119 (5th Cir.), *on rehearing*, 977 F.2d 161 (5th Cir. 1992):

---

[72]      (...continued)
rather, he was asked only whether Love was "staying busy" and "what was going on with him."   Stewart Depo., at 112.

[73]      Boyd Decl., at 6 ¶ 15; Texas Employees 2007 [Exh. 117 to Doc. # 72], at 19.

[74]      Boyd Decl., at 6 ¶ 15; Texas Employees 2007, at 19; Texas Employees 2008 [Exh. 118 to Doc. # 72-1], at 8.

[75]      *See* Love's Response, at 37-38; Stewart's Response, at 32-33.

> [G]ross statistical disparities resulting from a reduction in force or similar evidence may be probative of discriminatory intent, motive or purpose.  Such statistics might in an unusual case provide adequate circumstantial evidence that an individual employee was discharged as part of a larger pattern of layoffs targeting older employees.  This is ***not to say that such statistics are enough to rebut a valid, nondiscriminatory reason for discharging a particular employee.***  Generally, they are not . . . . [P]roof of pretext, hence of discriminatory *intent*, by statistics *alone* would be a challenging endeavor.

*Id.* at 162 (citations omitted) (bolded, italicized emphasis added; italicized emphasis in original).  "'[P]articularly in age discrimination cases where innumerable groupings of employees are possible according to ages and divisions within the corporate structure, statistics are easily manipulated and may be deceptive." *Tex. Instruments Inc.*, 100 F.3d at 1185 (citing *Walther*, 952 F.2d at 124).  "[A] statistical analysis that did not purport to analyze the facts surrounding the circumstances of the individual at issue was 'impotent' to establish whether an employer's stated reasons were pretextual." *Joseph v. City of Dallas*, 277 F. App'x 436, 442 (5th Cir. 2008) (unpublished) (citing *Tex. Instruments Inc.*, 100 F.3d at 1185).  Accordingly, courts consider statistical evidence probative as to pretext when "the plaintiff ha[s] offered particularized evidence directly challenging the defendant's announced rationale." *Tex. Instruments Inc.*, 100 F.3d at 1185 (collecting cases).

Here, Plaintiffs' data lacks probative value.  Plaintiffs' raw numerical data has

24

not been shown to have any statistical significance.[76]  *See Hughes v. Brinker Int'l, Inc.*, No. 07-11104, 2008 WL 2325645, at *1 (5th Cir. 2008) ("[The plaintiff] provides no analysis of this evidence beyond the raw number and offers no explanation of its context.  Without more, the statistical information fails to show pretext." (citing *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 583 (5th Cir. 2006))); *Cheatham*, 465 F.3d at 583 ("These statistics are not probative of discriminatory intent because they are devoid of context." (citing *Tex. Instruments Inc.*, 100 F.3d at 1185)); *Odom v. Frank*, 3 F.3d 839, 849 (5th Cir. 1993) (explaining that the raw data presented to the district court "without more, is not competent to prove anything"), *abrogated on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006); *Gonzalez v. Conoco, Inc.*, No. H-98-3109, 2000 WL 251744, at *11 (S.D. Tex. Feb. 1, 2000) (same).  Additionally, Plaintiffs' data is incomplete.  Plaintiffs did not provide data regarding employees who were not considered for layoffs or who were retained.

> ***Discriminatory Comments.***— Finally, despite Plaintiffs' deposition testimony

---

[76]   The data provided includes employees who worked at locations where Boyd and Hanley, the decision-makers regarding Plaintiffs, had no decision-making authority (outside the Conroe location and outside the South Texas region, respectively). Plaintiffs do not allege that anyone else employed by Defendants discriminated against them based on their age.  *See, e.g.*, Love Depo., at 14-15; Stewart Depo., at 10-11.

that Boyd and Hanley did not make any comments that reflected age discrimination,[77] Plaintiffs now argue that Boyd and Hanley made age-related comments that demonstrate their discriminatory intent.[78]  "Remarks may serve as sufficient evidence of age discrimination if they are: 1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue."  *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 683 (5th Cir. 2001) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996)). Plaintiffs argue that Boyd made comments concerning Love's lack of computer skills; that Hanley suggested that a strong salesperson would have knowledge of Defendants' computer system; and that Boyd suggested to Love that he could try to find employment at the data-based computer entry business opening next to the Conroe store.[79]  These comments are insufficient to establish discriminatory bias based on Plaintiffs' ages.  None invoked Plaintiffs'

---

[77]     *See* Love Depo., at 12-14; Stewart Depo., at 10-11.

[78]     *See* Love's Response, at 34-35; Stewart's Response, at 29-31.

[79]     To the extent Love asserts that a reference to him in a 2005 newsletter as a "young man" is evidence of discrimination, *see* The Connection [Exh. 45], dated June 8, 2005 (provided to the Court in paper copy only), the comment is too remote in time to be competent evidence of discrimination.  Additionally, this reference is not relevant to Love's claim because was made by Kennie Bates, who did not work for Defendants at the time of Love's discharge and had no role in Boyd and Hanley's decision to discharge Love.

ages expressly.  Moreover, as explained previously,[80] Boyd's critiques of Love's computer skills and work speed were accurate descriptions of Love's abilities. Further, the Fifth Circuit has affirmed summary judgment in cases where employees were fired due to their lack of computer or technological skills.  *See, e.g.*, *Ratcliff*, 57 F. App'x at 210; *Tex. Instruments Inc.*, 100 F.3d at 1176-78, 1183-84.[81]  The fact that an employee is criticized for the speed of his work or productivity, without more, is not a reference to the employee's age.  These comments by themselves do not establish pretext.  *See Woodhouse*, 92 F.3d at 254 n.4.

## IV.   <u>CONCLUSION</u>

Stewart has failed to establish a *prima facie* case of age discrimination. Plaintiffs both have failed to show that Defendants' legitimate, nondiscriminatory reasons for discharging them were pretextual.  Accordingly, it is hereby

**ORDERED** that Defendants Hajoca Corporation, LCR-M General LLC, LCR-M LP, and Moore Supply Company's Motion for Summary Judgment as to Plaintiff Dan Love [Doc. # 46] is **GRANTED.** It is further

**ORDERED** Defendants Hajoca Corporation, LCR-M General LLC, LCR-M

---

[80]      *See* Section III.B.1.

[81]      As to Plaintiffs' remaining arguments, Plaintiffs' fail to demonstrate how Defendants' Corporate Office's failure to review the layoff decisions or failure to show employees their job descriptions demonstrates pretext.  *See* Love's Response, at 38; Stewart's Response, at 33-34.

LP, and Moore Supply Company's Motion for Summary Judgment as to Plaintiff John Stewart [*Stewart* Doc. # 48] is **GRANTED.**  It is further

 **ORDERED** that Plaintiff John Stewart's Motion to Strike [*Stewart* Doc. # 53] is **DENIED as moot.**  The Court did not rely on any of the evidence to which Stewart objected in reaching its conclusions.  The Court evaluated the full record and did not rely on the statements in Defendants' Statement of Facts to which Stewart objected.

 A final judgment will be filed separately.

 SIGNED at Houston, Texas, this  **11th**  day of **September, 2013.**

Nancy F. Atlas
United States District Judge
